# DECEMBER TERM, 1885.    547

Wallace v. The Chicago, St. Paul, Minneapolis & Omaha R'y Co.

---

# WALLACE v. THE CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA R'Y CO.

1. **Contract:** NEGLIGENCE IN SIGNING WITHOUT READING: ESTOPPEL. Where plaintiff had the capacity to read the release signed by him, and had an opportunity to do so, and no fraud was practiced upon him to prevent him from reading it, but he chose to rely upon what another said about it, he is estopped by his own negligence from claiming that it is not legal and binding upon him, according to its terms.   See opinion for cases followed.

*Appeal from Woodbury District Court.*

SATURDAY, DECEMBER 12.

THE plaintiff, who was a train conductor on defendant's railroad, claims damages for a personal injury which he alleges he received by reason of the negligence of the defendant in failing to surface up and fill in earth between the ties upon which the iron rails of the track were laid. There was a trial by jury. Verdict and judgment for plaintiff. Defendant appeals.

*J. H. & C. M. Swan*, for appellant.

*S. J. Quincy* and *Isaac Pendleton*, for appellee.

ROTHROCK, J.—The plaintiff was the conductor of a transfer train engaged in moving cars across the Missouri river between Sioux City, Iowa, and Covington, Nebraska, by means of boats, and in making up trains and switching cars upon transfer tracks and side tracks. These transfer tracks were not permanent structures. By reason of the changing of the channel and banks of the river, the landing of the boats and the transfer tracks were required to be frequently moved. The tracks were laid down in a temporary manner, and the spaces between the ties were not filled up, and the ties were not placed at uniform distances from each other. The plaintiff claims that in attempting to make a coupling on one of these tracks at Covington, and while the cars to be coupled were in motion, his foot caught between two ties, and in attempting to extricate it he involuntarily threw up his hand in such a position that it came between the draw-heads of said cars, and he was severely injured. He was in full command of the train, and the cars were moving by his direction, and he makes no complaint of any negligence of the engineer or other train-men; and he admits that he was aware of the condition of the track. But he alleges that the defendant was negligent in the construction of the track, and that he made complaint of the track to the proper officers of the company, and that they promised to repair and properly construct it, and that the injury was received by reason of

the negligence of the defendant to keep its promise to make the proper repairs. The injury was such that it became necessary to amputate the third and fourth fingers of the left hand. Soon after the injury the plaintiff resumed work for the company, and continued in said employment for several months.

It is urged by counsel for appellant that the evidence does not show that the plaintiff made any complaint of the condition of the track in question to any officer of the defendant who had any authority over repairs upon the road, and that the evidence shows, without conflict, that the injury was properly attributable to the plaintiff's own carelessness and negligence. We do not deem it necessary to determine these questions, because, in our opinion, the judgment must be reversed upon another ground, which we will now proceed to consider.

II. The defendant, as a full defense to the action, pleaded that in February, 1883, several months after the injury was received, the plaintiff and the defendant made a full and fair settlement of all claims for damages by reason of said injury, and the defendant, in pursuance of said settlement, paid the sum agreed upon, to the full satisfaction of the plaintiff. Said settlement and the release were in writing, signed by the plaintiff. These instruments were introduced in evidence. It is unnecessary to set them out here. It is sufficient to say that they are a full acquittance and discharge of the defendant for all damages for the injury complained of. The injury is so fully described therein that no one could read the writings without knowing that they were a settlement of all claims for damages on account of the cause of action upon which the suit was brought. The defendant showed, by the testimony of its station agent at Covington, that he read the release to the plaintiff, and that he affixed his signature thereto with full knowledge of its contents, and that the witness had several conversations with the plaintiff

before the settlement .was made, and that the amount was agreed upon and fully understood by plaintiff.

The plaintiff claimed that the release was obtained from him by fraud, and was not binding upon him for that reason. To establish the charge of fraud he testified, in substance, that when he signed the writings they were not read over to him, but that the agent who procured his signature thereto stated to him that they were vouchers for his back pay, and that he had no knowledge of the contents of the writings which he signed. The plaintiff was a man of sufficient intelligence to be a railroad conductor. He had been deputy sheriff of Woodbury county, and could read writing .and make out papers and transact any kind of ordinary business. He stated in his testimony that there was nothing to hinder him from reading the papers before signing them, and nothing was done to keep him from reading them. An examination of all the facts and circumstances disclosed in the evidence leads the unprejudiced mind to the conclusion that the plaintiff was fully aware of the contents of the writings when he signed them. But that was a question for the jury. The question for us to determine is, did the plaintiff show that his signature was procured by fraud, conceding his own testimony to be true? Or, rather, did he show such a state of facts as that a jury might properly find that the contract which he signed was procured by fraud? We think it is very clear that his testimony did not authorize the finding of the jury. He was laboring under no infirmity which prevented him from reading the writings, as by reason of defective sight, or the like. He does not claim that he requested the instruments to be read to him, and that the contents were purposely misrepresented in the reading, or that he was deceived by any slight of hand, legerdemain, or artifice. On the contrary, he admits that he could have read the papers, and that he had full opportunity to do so, and the words "release of damages," in bold-faced printed letters, were at

the head of the release, and could have been seen at. a mere glance.

The defendant requested the court to charge the jury as follows: "(3) That if you find that the plaintiff had the. capacity to read the release signed by him, and had an opportunity to do so, and no fraud was practiced upon him to prevent him from reading it, but that, having full opportunity to read it before signing, he chose to. rely upon what Mr. Flint said about it, he is estopped by his own negligence from claiming that the same is not legal and binding upon him, according to its terms." This request to charge was refused. It should have been given. It is in exact accord with the cases of *Bell v. Byerson*, 11 Iowa, 233; *McCormack v. Molburg*, 43 Id., 561; and *McKinney v. Herrick*, 66 Id., 414. See, also, Pars. Cont., 772; Kerr, Fraud & Mistake, 77.

REVERSED.