CHRISTOPHER McHONEY, Respondent, v. THE GERMAN INSURANCE COMPANY OF FREEPORT, ILLINOIS, Appellant.

St. Louis Court of Appeals, December 20, 1892.

1. **Reformation of Fire Insurance Policy:** LACHES OF INSURED. It is the duty of the insured to promptly examine a fire insurance policy, when he receives it, and to see whether it corresponds with the agreement made therefor. He will not be entitled to the reformation of the policy, so as to make it to conform to alleged oral agreements on the part of the soliciting agent of the insurance company, if he retains the policy without objection for an unreasonable time; nor will the inability of the insured to read alter the effect of such retention.

2. **Preponderance of the Evidence.** Such oral agreements were established by the unsupported testimony of the insured alone, and his testimony was contradicted on every material point by that of the soliciting agent of the insurance company, who, moreover, at the date of the trial, was wholly disinterested. *Held*, that the preponderance of the evidence was, therefore, with the insurance company.

*Appeal from the Montgomery Circuit Court.*—HON. E. M.
HUGHES, Judge.

REVERSED.

*James D. Barnett,* for appellant.

(1)   Plaintiff contracted with Laird, whose author-
ity as agent he knew to be limited, for an insurance
policy.   It was his duty within a reasonable time after
the receipt of the policy to examine it, and if erroneous to
have it corrected.   His failure to complain of the provis-
ions of the contract is an acceptance of them.   *Ins. Co. v.
Neiberger,* 74 Mo. 168; *Clem v. Ins. Co.,* 29 Mo. App. 666.
(2)   A court of equity will not alter or reform a written
contract unless the evidence of fraud or mistake is clear
and unmistakable.   If the mistake is made by an agent
whose power is known to be limited, it must be shown
that the principal is also a party.

*Barker & Shackelford* and *John M. Barker,* for
respondent.

(1)   Plaintiff knew nothing of Laird's authority.
The case of *Neiberger v. Ins. Co.,* 74 Mo. 167, is not in
point, because in that case there was no evidence
showing the insured could not read or write, or that he
intrusted the agent to fix up the papers as McHoney
did.   In McHoney's case there is an application which
is as much a part of the contract as a policy, and it was
changed, and beyond his control.   In *Clem v. Ins. Co.,*
29 Mo. App. 666, the court simply says that the
insured should return an unsatisfactory policy "after
the discovery" of objectionable features.   We insist
that no court ever has or ever will extend that doc-
trine so as to deny a remedy to those who have been

imposed upon. If such were the case, the ignorant and the trusting would be in the complete power of the designing and dishonest. (2) The evidence of the plaintiff was clear and well supported his petition. The evidence was before the chancellor where he could hear and see the witnesses and could best judge of the facts, and his finding is conclusive.

THOMPSON, J.—This case was before this court on a former appeal. 44 Mo. App. 427. It was again tried before the judge sitting as a chancellor, and the court, after hearing the evidence and taking the case under advisement until the next term, rendered a judgment disposing of the whole case in favor of the plaintiff, by adjudging that he recover the amount secured by the policy with interest. In other words, the court proceeded upon the evidence adduced in support of the first count, which was in the nature of a bill in equity to reform the policy, to adjudge that the policy be reformed, and then, proceeding to do complete justice, rendered an ordinary judgment at law on the policy, *quod recuperet.* This was contrary to the mode of procedure pointed out by this court on the former appeal; but, in the view we take of the case, it will not be necessary for us to make it turn upon this question of procedure. It plainly appears that, applying the law to the conceded facts, the plaintiff is not entitled to recover on either count. The grounds on which a reformation of the policy was sought for under the first count were, that a soliciting agent of the defendant had presented himself to the plaintiff and had persuaded the plaintiff to make the usual written application for the policy; that the plaintiff was unable to read and write; that the defendant's soliciting agent thereupon undertook to fill out the application for him; and that this soliciting agent, either through mistake

or fraud, filled out the application so as to state several material facts differently from the manner in which the plaintiff stated them to him, and from the real truth. One of these facts was that the dwelling-house, which was the subject of the insurance, was occupied by a tenant as a private dwelling, whereas in point of fact it was unoccupied at the time, though subsequently occupied by a tenant as a private dwelling. The plaintiff's evidence was to the effect that the soliciting agent of the defendant, who thus erroneously or falsely filled out this clause of the application, represented to him that the policy would contain a thirty-day clause, applicable to premises which were rented to tenants; that is to say, a clause permitting such premises to be unoccupied for a period not to exceed thirty days pending a change of tenants. In pursuance of the application, as made and delivered to the agent of the company at Montgomery City, a policy was drawn up and sent to the plaintiff by mail. This policy did not contain any such thirty-day clause as above described, but it did contain this clause of the application indorsed upon the back of it, with this preliminary statement: "The following questions and answers are taken from the application, signed by the assured and referred to in the within policy, and are the assured's warranty and made a part of the contract of insurance. * * * 'It is occupied by tenant as a private dwelling.'" The policy on its face contained this clause: "By the acceptance of this policy the insured covenants that the application shall be and form a part hereof, and a warranty by the assured, and the company shall not be bound by any act or statement made to or by any agent, unless inserted in this contract." Another clause of the policy was as follows: "If said building, or either of them (sic), now is or shall become vacant or

unoccupied, * * * then and in every case this policy shall be absolutely void.'' The policy bore date the eighth day of January, 1886, and insured the dwelling-house in the sum of $700, for the term of five years, in consideration of a note for $14 given by the plaintiff which it is admitted was paid. It is conceded that the premises were vacant when the application was made, thus reciting that they were occupied by a tenant as a dwelling-house. It is also conceded that, although they had been subsequently occupied, they were in fact vacant at the time when the house was destroyed by fire. This was admitted in two letters written by the attorneys of the plaintiff to the defendant, in which they demanded a settlement of the loss, and is admitted by the plaintiff in his testimony, although he claims that he did not personally know that the tenant had moved out at the date of the fire. This fact, under the terms of the policy, renders it void.

The dwelling-house thus insured was destroyed by fire on the fifteenth of March, 1887, more than fourteen months after the policy had been delivered to the plaintiff. The plaintiff admits in his testimony that during all this time he kept the policy in his possession without examining its terms and conditions. During all this time the plaintiff had the policy in his possession containing these recitals in its body and indorsed on its back. Whatever fraud or deception may have been practiced upon him by the soliciting agent in filling out his answers to the questions in the application, by keeping the policy in his possession without examination, he, in intendment of law, accepted it as written, and assented to its terms as constituting the contract, and the only contract between him and the defendant. This is clearly shown by the decision of the supreme court in *American Ins. Co, v.*

*Neiberger*, 74 Mo. 167, where a person, who had taken out a policy of insurance and made a cash payment and given premium notes, was sued on two of the premium notes, and attempted to avoid his liability thereon on the ground that the agent of the company, who procured him to take out the insurance, represented to him that he would obtain for him a policy containing a clause providing for cancellation by the assured, whereas the policy delivered to him contained no such clause and was otherwise different from what the agent represented that it would be. But it appeared that the policy was issued on the twenty-fifth of January, and that it was not rejected until the tenth of the following May. The court held that, by keeping it for this length of time without objection, he assented to its terms, and thereby made it the contract between himself and the insurance company. Mr. Justice HOUGH, in giving the opinion of the court, said: "If the written application had undertaken to set forth all the provisions which the policy to be issued should contain, of course both parties would be bound by it, and parol evidence would be inadmissible to vary its terms. But, when the application does not attempt to set forth all the provisions which the policy to be issued must contain, and the agent, with or without authority, represents that the policy will contain certain stipulations, which are not unlawful, then the policy must contain them, or the insured will not be bound to accept it. But in such case it will be the duty of the insured when he receives the policy promptly to examine the same, and, if it does not contain the stipulations agreed upon, to at once notify the company of such fact, and of his refusal to accept said policy. The policy in this case was issued on the twenty-fifth day of January, 1875, and it was not rejected by defendant until May 10, 1875. If the policy was received by

the defendant soon after the date on which it purports to have been issued, we think he waited too long to elect whether he would receive the policy without the stipulation in regard to cancellation, or refuse to accept it because it did not contain such stipulation. After such delay, he will be deemed to have accepted the policy as issued." At p. 173.

The case before us is a stronger case for the application of the principle thus laid down by the supreme court than was the case before that court; for here the delay of the assured was more than four times as long as in that case, and, what is more, he never examined his policy until after the loss had taken place. It would be idle for insurance companies to attempt to protect themselves by any clause in policies of insurance, if such clauses could be set aside after such a lapse of time, and after the happening of a loss, upon parol evidence—and not only this, but upon the contradicted parol evidence of the assured party alone. Such a doctrine would, as forcibly argued by the counsel for the insurance company in this case, convert every policy of fire insurance into a promissory note of the insurance company, defeasible in case the insured property should not happen to burn down. Nor does the fact that the plaintiff could not read take his case out of this principle. His wife could read; his daughter could read; his neighbors could read; his lawyers could read; and the same duty rested upon him of informing himself seasonably whether or not the provisions of the contract, as executed and delivered to him, complied with the original understanding, as rests under such circumstances upon contracting parties who are not illiterate.

It thus appears that, upon the contract subsisting between the parties and upon the undisputed evidence, the plaintiff is not entitled to recover in this case; and

McHoney v. The German Ins. Co.

the judgment must accordingly be reversed. It is so ordered with the concurrence of all the judges.

ON MOTION FOR REHEARING.

ROMBAUER, P. J.—The plaintiff, while conceding that the rule stated in *American Ins. Co. v. Neiberger*, 74 Mo. 167, when applied to the facts of this case, is fatal to his recovery, claims a rehearing on the ground that that case has been overruled by later decisions of the supreme court. He cites a number of subsequent cases, all of which we have carefully examined. We fail to discover that the *Neiberger case* has been overruled in any of them, either expressly or by implication. As that decision under the constitution is binding upon us, any argument that that case was not well considered by the supreme court, and that it is in conflict with the law in other jurisdictions, is necessarily precluded.

We wish, however, to state more pointedly what we have intimated in our former opinion—that, even if the *Neiberger case* were out of the way, the plaintiff under the evidence in the record is not entitled to the relief prayed for, and granted by the trial court. His claim of fraud and mistake rests upon his own unsupported evidence, which on every material point is contradicted by .the person who wrote the application, and who at the date of the trial was, as the record shows, a wholly disinterested witness. The preponderance of evidence, therefore, on the controlling question involved was with the defendant and not with the plaintiff, and that fact of itself, under elementary rules applicable to equity proceedings of this character, is sufficient to debar him of recovery.

The motion for rehearing is overruled. Judge BIGGS concurs.