## FARLOW v. CHAMBERS.

Defendant signed, without reading, a contract agreeing that, if plaintiff would get all the stock of a certain corporation for defendant for $35,000, defendant would pay plaintiff a commission of $1,250. There was no fiduciary relation existing 'between the parties, nor was defendant illiterate. **Held,** that it was no defense to an action on the contract that defendant signed on plaintiff's representation that it conformed to a prior oral agreement between them that plaintiff was to procure an option on the stock, and that, if defendant elected to take up the option, he would pay plaintiff par for the stock held by him.

(Opinion filed, January 3, 1907.

Appeal from Circuit Court, Pennington County. Hon. LEVI McGEE, Judge.

Action by Edgar J. Farlow against W. H. Chambers. From a judgment in favor of defendant, plaintiff appeals. Reversed. New trial ordered.

*Charles W. Brown* and *James Boyd,* for appellant.

The defendant is bound by his contract, and cannot be heard to say that he did not read it or know its contents. Hazard v. Griswold, 21 Fed. 178; Taylor v. Fleckenstein, 30 Fed. 100; Hawkins v. Hawkins, 50 Cal. 558; Upton v. Tribilcock, 91 U. S. 44; Mc-Cormack v. Molburg, 43 Iowa, 561; Wallace v. Chicago, etc., R. Co., 25 N. W. 772; Bell v. Byerson, 10 Iowa 233; McKinney v. Herrick, 23 N. W. 767; Minneapolis, etc., Ry. Co. v. Cox, 41 N. W. 24; Bonnot Co. v. Newman, 78 N. W. 817; Walton Guano Co. v. Copelan, 52 L. R. A. 268; Jackowski v. Illinois Steel Co., 79 N. W. 757; Lumley v. Wabash Ry. Co., 71 Fed. 21; Chicago etc., Ry. Co. v. Belliwith (C. C. A.) 83 Fed. 437; Wagner v. National Life Ins. Co.. (C. C. A.) 90 Fed. 407; Deering v. Hoeft, 87 N. W. 298; Maxfield v. Schwartz, 47 N. W. 448; Greenfield's

Estate, 14 Pa. St. 491; Sec. 346 Bishop on Contracts; 2 Parsons on Contracts, 772, and note; 9 Cyc. 388.

*Schrader & Lewis,* for respondent.

Where two parties have entered into an oral agreement and one directs the other to reduce the same to writing, who at the time falsely states what he has written upon a material fact and the other relying on such statements, signs without reading, the contract is fraudulent and may be avoided by the party aggrieved whether it is long or short as between the original parties thereto, and the offending party shall not be heard to say in defense of his fraud that the other was negligent or ought not to have trusted him. Wenzel v. Schultz, 78 Cal. 221. In support of which the court quoted Sections 1571 and 1572 of the California Civil Code, identical with Sections 1200 and 1201 of South Dakota Civil Code. Gibbs v. Limbury, 22 Mich. 478; Anderson v. Walter, 34 Mich. 113; Burroughs v. Guano Ala., 1 So. 212; Brooks v. Matthew, 3 S. E. 627; Cummings v. Ross, 90 Cal. 68; Wood v. Cincinnati Safe Co., Ga. 22 S. E. 909; Burlington Co. v. Evans, 69 N. W. 558. The alleged contract is unilateral or an option. It creates a right in personam. And must be exercised and notice given of performance within a reasonable time and before an action can be brought thereon. Stanford v. Thompson, (C. C. A.) 135 Fed. 991; Myers v. Strue & Luns, 102 N. W. 507; Dyers v. Duffy, 24 L. R. A. 339.

FULLER, P. J. The validity of the following contract which, upon conflicting testimony, the jury found respondent signed without reading is the ultimate question presented by this appeal: "Rapid City, So. Dak., Mar. 4, 1903. E. J. Farlow—Sir: If you can get all the stock in The Rapid City Electric Light company for me for thirty-five thousand dollars I will pay you a commission of twelve hundred and fifty dollars. W. H. Chambers, M. D." Though controverted in every material respect by evidence consistent with the theory that respondent agreed to pay appellant a commission of $1,250 for securing an option to purchase the property above mentioned for $35,000, there was testimony tending to show

that, prior to the execution of the written contract, the parties had been negotiating for the procurement of such an option, and had arrived at an agreement by the terms of which appellant, a director and stockholder of the company, was to secure for respondent, from the corporation, an option to purchase its entire capital stock of 40,000 shares for $35,000, and, upon condition that respondent thereafter elected to exercise his privilege of purchasing the property, appellant was to be paid par for his 10,000 shares of stock. Respondent testified to the effect that the contract was written in his presence by appellant, who informed him that it was the same as the oral agreement and that appellant was to receive par for his stock, if respondent took up the option, and that he signed the instrument without reading it because he was in a great hurry and "took Dr. Farlow to be a gentleman." In view of the verdict in his favor respondent's version of the oral agreement must be taken as true and it will be assumed, in considering the case, that he relied upon the representation of appellant that the written instrument was strictly in accordance therewith.

Although both parties are members of the medical profession, appellant's actual business was that of a real estate agent, while respondent, in possession of all his faculties, was engaged in numerous industrial enterprises of considerable magnitude and is a graduate of five prominent institutions of learning. He was a non-resident of this state and, prior to negotiating for the electric light plant, was wholly unacquainted with appellant and between them no confidential or fiduciary relation ever existed. Consequently these litigants dealt at arm's length and the case is not of an illiterate party seeking relief from the consequences of his failure or inability to read a written instrument before affixing his signature thereto. Neither is it one in which the signer was prevented from ascertaining the truth by subterfuge or some fraudulent devise, such as the substitution of one instrument for another or the introduction of a latent clause wholly at variance with and intended by artifice to pervert the oral agreement into which the parties had previously entered. As the instruments here sought to be avoided consists of but one sentence of three lines and its legibility is not

questioned, it seems almost incredible that respondent could have signed the same without at least observing the last line immediately above his signature and as follows: "I will pay you a commission of twelve hundred and fifty dollars." As the law presumes that he read what he was signing and understood its contents, the contract can only be vitiated on the ground of fraud by competent evidence which is clear, convincing, and conclusive.

In McGee v. Verity, 97 Mo. App. 486, 71 S. W. 472, a decree in equity canceling a note and trust deed for the reasons here urged was reversed on appeal, and, in the course of the opinion, the court said: "Plaintiff cannot be allowed to show that the written paper signed by him does not contain the contract. If a party is induced to sign a contract by fraud, he can, of course, avoid it for that reason. It is, however, clear, that merely falsely representing to a man in possession of his faculties and able to read that a writing embodies their verbal understanding is not the fraud the law means." From the case of Bostwick v. Mutual Life Insurance Co., 116 Wis. 392, 89 N. W.. 538, 92 N. W. 246, we quote; "It does not militate, as counsel for respondent seem to think, against the maxim that a person cannot take advantage of his own wrong, but enforces that other one, which is quite as well established, that the court will not constitute itself the guardian of persons of mature age and ordinary intelligence, protecting them against the results of their own negligence; that it will not furnish a person a remedy for a wrong where he cannot prove a legal claim for damages without showing that his own negligence intervened between the act of the alleged wrongdoer and the result complained of, and was the real, efficient, producing cause of his injury; that in such a case it will be conclusively presumed that he voluntarily accepted the situation, because, if he had used ordinary care, the injury complained of would have been prevented." So in Commissioners v. Younger, 29 Cal. 172, the doctrine that seems most reasonable is thus announced: "But a court of equity will not relieve a party from a contract on the ground of misrepresentation where no confidential relation exists between the parties, and where the means and sources of knowledge being equally accessible and open

to both, the party complaining has the right to place reliance upon the statements of the other, for the law aids the vigilant, not the idle, and will not undertake the care of persons who will not, with the means at hand, take care of themselves." The head note fully supported by the opinion in Wallace v. Railway Co., 67 Iowa, 547, 25 N. W. 772, is as follows: "Where plaintiff had the capacity to read the release signed by him, and had an opportunity to do so, and no fraud was practiced upon him to prevent him from reading it, but he chose to rely upon what another said about it, he is estopped by his own negligence from claiming that it is not legal and binding upon him, according to its terms." In a suit against a surety on an undertaking in the sum of $53,735, conditioned that his principal would abide and perform the orders and decrees of the Supreme Court of Rhode Island in a certain action in equity, it was alleged as a complete defense that the defendants signature to such writing obligatory was procured by falsely representing to him that it was something entirely different, and, placing confidence therein, he signed such instrument without reading it. On the ground that the defendant's plea in bar to the action contained no allegation that he is illiterate or blind, or that the instrument was falsely read to him or that his signature to it was obtained by a fraudulent substitution of it for another instrument which it was his intention to execute, or any other averment that would entitle him to rely upon the alleged fraudulent representations of plaintiff, his agents, and attorneys, as to its contents, a demurrer was interposed concerning which Mr. Justice Gray, speaking for the federal court, says: "This plea is clearly insufficient, for the reason assigned in the demurrer. A person, capable of reading and understanding an instrument which he signs, is bound in law to know the contents thereof, unlesss prevented by some fraudulent device, such as the fraudulent substitution of one instrument for another. This plea does not aver any fact to excuse or justify the defendant in relying upon the representations alleged to have been made in behalf of the plaintiffs." Hazard v. Griswold (C. C.) 21 Fed. 178. The general rule of law is stated in 9 Cyc., page 388, as follows: "As a written contract is the highest evidence of the terms of an agreement between the parties to it, it is the duty of every con-

tracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. He owes it to the public which, as a matter of public policy, treats the written contract as a conclusive answer to the question, What was the agreement? Hence the courts do not permit one to avoid a contract, into which he has entered, on the ground that he did not attend to its terms, that he did not read the document which he signed, that he supposed it was different in its terms, or that it was a mere form."

At the suggestion of respondent in this case appellant reduced to about 30 plainly written words, most of which are monosyllables, an ostensible expression of the oral agreement into which they had entered, and to allow a party to avoid such a contract, by reason of the facts and circumstances disclosed by the record, would render ineffectual the best possible means of avoiding frequent misunderstandings and litigation of the most vexatious character.

Not being convinced that it is a waste of time, ink and paper for parties to take the precaution to reduce their contracts to writing, the conclusion is reached that the evidence introduced at the trial is not sufficient to annul the instrument made the basis of this action.

That respondent under the circumstances disclosed by the evidence could avoid all liability by merely showing that he was induced to sign the contract without reading or knowing its contents by the false statement of appellant that it conformed to the oral agreement was the erroneous theory upon which the case was tried and submitted to the jury, and for that reason it is unnecessary to determine any of the remaining questions discussed by counsel in their briefs.

It cannot be otherwise than that appellant was prejudiced by such errors at law, and the judgment appealed from is reversed, and a new trial ordered.