THE FIDELITY & CASUALTY COMPANY OF NEW YORK, Respondent, v. DIERKS LUMBER & COAL COMPANY, Appellant.

**Kansas City Court of Appeals, November 16, 1908.**

1. **LIABILITY INSURANCE: Reforming Policy: Premiums Earned: Laches.** It is the duty of the assured to read the policy promptly and object reasonably, and it is too late after the risk has been carried and the premium earned to consider the questions of variance between the application and the policy.

2. ———: ———: **Renewal: Varying Terms: Laches.** Though a renewal may be a new contract and the assured may rely upon the implication that it does not vary from the old, yet such rule cannot extend to a case where year after year the assured pays the variant premiums for the renewal policy and fails to assert his rights for rebates under the original policy, since his negligence is inexcusable. [Cases distinguished.]

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

AFFIRMED.

*Kirkpatrick & Schwind* for appellant.

(1) The answer tendered a sufficient equitable defense to the second, third and fourth counts of the petition. Leitensdorfer v. Delphy, 15 Mo. 161. (2) One who prepares a contract pursuant to a previous agreement, and delivers a contract materially varying from the one contemplated, cannot impute negligence to the other party, if the latter, reposing confidence, fails to discover the variance. Wells v. Adams, 88 Mo. App. 216. (3) Where there is a pre-existing contract, definite and specific in its terms, and parties thereto agree on a renewal, and one party assumes to prepare the new contract, and inserts variant clauses without the knowledge or consent of the other, the latter will not be bound by the variant clauses, nor estopped by a failure to read.

Palmer v. Insurance Co., 54 Conn. 488; Hay v. Insurance Co., 77 N. Y. 240; Hartford Steam, etc., Co. v. Cartier, 50 N. W. (Mich.) 747; Insurance Co. v. Hearne, 87 U. S. 494; Insurance Co. v. Hewitt, 3 B. Mon. (Ky.) 231. (4) It was competent to show under the answer the knowledge imparted to respondent, prior to issuance of first policy, that appellant wanted office men excluded from the policies. Steam Co. v. Cartier, supra.

*Harkless, Crysler & Histed* for respondent.

(1) The answer in this case pleaded no defense. It stated nothing further than that the defendant had been given policies that covered more of its employees than it intended it should. After the policies had all expired and the defendant had had the benefit of them for years, and claims only that a mistake was made in writing the policy, and admits that they did not read them or even look at them no defense of any kind was either pleaded or shown. Bostwick v. Insurance Co., 116 Wis. 392, 67 L. R. A. 705; McMasters v. Insurance Co., 99 Fed. 856. (2) Oral testimony was not competent in this case at all. The whole contract was in writing, and after the defendant had had the full benefit of the policies, and full benefit of the protection, it could not by oral testimony undertake to show that they ought to have been different. Thresher Co. v. Lumber Co., 81 Mo. App. 255; McMasters v. Insurance Co., 99 Fed. 856. (3) But it is well settled in this State and elsewhere that where a policy of insurance or any other kind of contract has been issued, and the defendant has had the benefit of it and did not read or examine its policies or make any claim that there was any mistake until long after the expiration of the contract, that it had no standing whatever in its charge that some mistake had been made, and especially where there is no pretense that the plaintiff in any way prevented it from examining its policy. Insurance Co. v. Neiberger, 74

Mo. 167; Bostwick v. Insurance Co., 116 Wis. 392, 67 L. R. A. 705.

JOHNSON, J.—Action by an insurance company to recover premiums earned and not paid on four policies of "liability insurance" issued to defendant.

May 16, 1900, plaintiff issued the first policy by the terms of which it agreed, in consideration of a premium of forty dollars paid by defendant, to indemnify defendant, the proprietor of a lumber yard in Kansas City "against loss from common law or statutory liability for damages on account of bodily injuries, fatal or non-fatal, accidentally suffered within the period of this policy by any employee or employees of the assured while on duty within the factory, shop or yards mentioned in the schedule hereinafter given, or upon the ways immediately adjacent thereto provided for the use of such employees or the public, in and during the operation of the trade or business described in the said schedule." The period of insurance was one year, and the policy contained a stipulation that should the total wages paid by defendant during the year to the employees mentioned in the schedule exceed $5,000, defendant should pay an additional premium of eight-tenths of one per cent on the excess. The employees included in the schedule were yardmen and drivers. Officials of the defendant company and office men were not included. At the expiration of this policy, a renewal policy was issued and accepted by defendant. It provided insurance for the succeeding year on the terms and conditions contained in the original policy with this exception, instead of restricting the insurance to yardmen and drivers the schedule added office men and executive officers, "except officers."

When this policy expired, a renewal policy for another year was issued and at the end of that year another policy which expired May 16, 1904. The last two mentioned policies were duplicates of the second policy.

Their schedules included office men, yardmen and drivers.

The petition is in four counts, each policy being made the subject of a separate count. It is alleged in the first that the total wages paid by defendant during the period covered by the first policy exceeded $5,000, by the sum of $518.11, and an excess premium of $4.15 is demanded. In the second count, the excess wages paid are placed at $3,201.76, and a premium of $25.61 is claimed. In the third, the excess wages stated are $3,-429.72, and the premium claimed is $27.44. In the fourth, the excess wages stated are $2,625.15, and the premium claimed is $21. Judgment is asked on each count in the sum of the excess premium earned. The answer admits that the first policy was issued as alleged, but avers that the total wages paid to the employees included in the schedule were $3,789.55, and defendant claims a rebate of $8.69 on the premium paid. With respect to all of the renewal policies, defendant alleges, in substance, that at the respective times when they were issued, it was the understanding and agreement between plaintiff and defendant that they should be "precisely similar" to the first policy; that the variance in them by which "office men" were added to yardmen and drivers was made without notice to defendant and defendant did not know of the existence of the variance until after the bringing of this suit on January 5, 1906, and that the change was made "through mistake or fraud" and "was in pursuance of the design, on the part of plaintiff to deliver to defendant a policy under which it could claim an excessive additional premium based on the wages paid to office men." Further, it is alleged that the wages paid to yardmen and drivers during each of the three years covered by these policies was less than $5,000. The prayer of the answer is for the reformation of the last three policies to express the real contract of the parties and for judgment for the amount

of the rebates due defendant from the premiums paid. Plaintiff's reply is a general denial.

The cause was sent to a referee, who found the issues for plaintiff. Exceptions were filed and overruled and judgment was entered for plaintiff on each count for the amount demanded. Defendant appealed.

In respondent's brief, we find an excerpt from a written opinion delivered by the trial judge which so clearly and accurately expresses the views we entertain of the law of the case, that we adopt it as our own opinion:

"This is the first controversy which has ever come to my attention in which complaint has been made by the insured that his insurer insured too much. In my opinion the third, fourth and fifth paragraphs of the answer do not state facts sufficient to constitute a defense to plaintiff's action or an affirmative equitable cause of action and the referee properly sustained the objections to the testimony previously referred to. The answer does not set up a *mutual mistake,* which is the only kind of mistake which will justify a recision. It does not set up facts from which it can be inferred that defendant was deceived or in any way misled as to the contents of the policies, which is the only kind of 'fraud' which could avail the defendant. The claim of defendant put most strongly is that it did not get what it ordered, and that in itself is not ground for reformation of a contract many years old.

"I am of opinion that the defendant is guilty of such laches as prevents its setting up its claims of 'fraud or mistake.' The second policy was delivered in May, 1901; the third in May, 1902; and the fourth in May, 1903. Yet never, until sued here, in January, 1906, did it cause the policies to be read, or set on foot proceedings to rectify the wrong which had been done, and this, even though its claims defendant had collected $25.83 too much in premiums.

133 App—41

"Plaintiff's undertaking was to insure the defendant from loss for damages for liability for personal injuries to the employees specified. It is immaterial whether or not there was liability incurred or whether or not plaintiff was called upon to defend against it. Plaintiff could not have questioned its own policy. It assumed the liability might have been called upon at any time between May, 1901, and May, 1904, to pay damages to an office man or defend his action and not until twenty months after the expiration of the last policy did the insured discover that the insurer had protected him too extensively, rather than too narrowly. To put the matter in business phrase: 'The plaintiff has earned the premium,' and it would now be an act of grossest injustice to deprive plaintiff of it.

"Defendant's duty was to read the policies promptly and object reasonably. It is too late now, after the risk has been carried and the premium earned, to consider questions of variance between application and policy. [Insurance Co. v. Nieberger, 74' Mo. 167; McHoney v. Insurance Co., 52 Mo. App. 94; Lierheimer v. Insurance Co., 122 Mo. App. 374; 99 S. W. 527. See a leading case; Bostwick v. Insurance Co., 116 Wis. 392, and notes.]"

There is a very material difference in principle between the facts alleged in the answer before us and those considered in the following cases cited by defendant: Palmer v. Insurance Co., 9 Atl. 248; Hay v. Insurance Co., 77 N. Y. 238; Insurance Co. v. Carter, 50 N. W. 747. Though a renewal policy is a new and independent contract of insurance (Long Bros. Groc. Co. v. Insurance Co., 110 S. W. 29), the courts in the cases cited appear to think that the assured is justified in relying on either the express or implied promise of the company not to vary the terms of the new policy from those of the old without notice to him. This exception to the rule of *caveat emptor*, we may concede for argument is well grounded, and yet it should not be extended to a case

such as the one before us where the assured, year after year, accepts and pays for the variant renewal policies and acquires, but fails to assert, rights to rebates under their terms had they been duplicates of the original. Failure to discover the alteration and to insist on its rectification for so long a time can appear in no other light than as the result of inexcusable negligence. For a court of equity to reform the contract in such case would result in the perpetration of gross injustice, since the effect of such action would be to permit the assured to receive the benefit of the additional insurance under circumstances clearly bespeaking acquiescence in the change and then to repudiate the obligation of the contract at his convenience. We think the laches of defendant is clear and that it deprives him of any right to affirmative relief.

The judgment is affirmed. All concur.