UNION CENT. LIFE INS. CO. v. SHORT.
(No. 6223.)

(Court of Civil Appeals of Texas. San Antonio. May 14, 1919.)

1. INSURANCE ⬤⟞198(4)—LIFE INSURANCE—RECOVERY OF PREMIUM—FRAUD.

Though agent represented to plaintiff that premium would be $270 and plaintiff did not know that policy provided for an annual premium of over $337, where no concealment or fraud was used when application was made and the policy followed the terms of the application, plaintiff, who could read, but who kept the policy and application for about a year before examining them, cannot recover from the company the amount paid; he having actually received protection under the policy.

2. INSURANCE ⬤⟞198(4)—LIFE INSURANCE—FRAUDULENT REPRESENTATIONS OF AGENT.

In such case, the rule is that fraudulent representations of the agent, to be available to insured, must take place at the time of the delivery of the policy, at which time the contract is consummated, and a preliminary representation of insurer's agent that the premium would be a certain amount, when in fact the premium on the policy as delivered was more, was not fraud.

Appeal from Guadalupe County Court; J. B. Williams, Judge.

Suit by H. E. Short against the Union Central Life Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Wurzbach & Wirtz, of Seguin, for appellant.

Dibrell & Mosheim, of Seguin, for appellee.

FLY, C. J. Appellee sued appellant to recover the sum of $270, alleged to have been paid on an insurance policy on his life, which he alleged he had been induced to apply for and procure through the fraud of an agent of appellant. The cause was tried by jury, and, upon responses to special issues submitted by the court, judgment rendered in favor of appellee for $298.39.

[1] It was claimed by appellee that the agent of appellant induced him to take out a $10,000 life policy, permitting other policies to lapse in order to insure with appellant, upon the representation of the agent that the amount of the premium would be $270 each year, and that he afterwards discovered that appellant was claiming an annual premium of $337.10. The jury found that the agent represented to appellee that the premium would be $270; that appellee did not know at or before his acceptance of the policy and the execution of a note for the premium that the policy provided for an annual premium of $337.10; that appellee used ordinary care in signing the application for insurance, which showed a premium of $337.-10, and exercised ordinary care in accepting a policy of insurance which provided for an annual premium of $337.10.

Through propositions under the first assignment of error it is contended that under the law, as appears in articles 4953 and 4954 of the Revised Statutes of Texas, the policy of insurance and the application for insurance constituted the entire contract between appellant and appellee, and the agent could not, by any representations, vary the terms of the contract as contained in the application and policy; that appellee was guilty of negligence in not discovering the fraud, if any, and was not damaged because he had been insured for $10,000 for the $270. These propositions are offered under an assignment of error which assails the action of the court in refusing to instruct a verdict for appellant.

Article 4953 provides that—

"Every policy of insurance issued or delivered within this state on or after the first day of January, 1910, by any life insurance company doing business within this state, shall contain the entire contract between the parties, and the application therefor may be made a part thereof."

Article 4954 has reference to rebates and discrimination. Under the allegations of fraud and the evidence of appellee, we doubt the applicability of the two articles to this case. There was nothing in the evidence that tended to show that appellee knew that

he was contracting for any but the regular premiums.

The evidence in this case shows that appellee signed an application for insurance in which was written in plain figures the premium of $337.10; that the policy with the application attached was given to him by the agent. On the envelope the amount of the premium, $337.10, plainly appeared, as it did on the policy and application. Appellee testified that he did not discover the amount of the premium for about a year after he applied for and obtained the policy. The jury has found that appellee did not know what was in the application and policy, although they were in his possession for months, and the case will be considered as though that is an established fact.

There has been some contrariety of opinion on the question as to whether the insured is not estopped from setting up errors in an application and policy, the former of which he signed and both of which he had in his possession for a long time. In a Connecticut case (Ryan v. Life Ins. Co., 41 Conn. 168, 19 Am. Rep. 490) it was held that it was inexcusable negligence to sign an application for a life risk without reading or having it read. The court said:

"It is for his interest to do so, and the insurer has a right to presume that he will do it. He has it in his power to prevent this species of fraud, and the insurer has not."

So it was held in Ins. Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934; Walker v. Ins. Co., 46 Kan. 312, 26 Pac. 718; Briggs v. Ins. Co., 65 Mich. 52, 31 N. W. 616; Ins. Co. v. Freedman, 159 Mich. 114, 123 N. W. 547, 32 L. R. A. (N. S.) 298; Cuthbertson v. Ins. Co., 96 N. C. 480, 2 S. E. 258.

No matter what representations may have been made to appellee before the application was made, it is not pretended that any device, concealment, or fraud was used at the time the application was made, and the policy followed the terms of the application. Appellee knew how to read, and should, in the exercise of ordinary diligence, have read the application. It is true that appellee testified in his direct examination as though the application was blank when he signed it, but on the cross-examination he admitted that portions of it were filled, and it is clear from the intimate matters about himself and wife written in the application that the information was furnished by appellee. The only mistake complained of was as to the amount of insurance in another company. The written parts of the application were done in the same ink. He not only failed to even look at policy or application, but kept them for about a year before examining them.

The distinction is drawn between cases where the fraud or mistake is such as to render the policy void ab initio, and those not rendered void, and the insured has actually received protection under the policy. In the first instance it is held he is not bound, but in the latter that he is. The insured in the latter case, it is held, is estopped to set up fraud, and is chargeable with notice of the contents of the policy.

[2] The evidence fails to show that the representation as to the amount of the premium was made at the time the application was signed or the policy delivered. The rule is that the fraudulent representations must take place at the time of the delivery of the policy. As held in Bostwick v. Mutual Life Ins. Co., 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, 67 L. R. A. 705:

"A person is negligent in receiving an article and accepting it without any examination thereof, wholly relying on representations, whether fraudulent or not, made at or previous to the time when the article was contracted for or ordered."

Appellee did not testify that the representation as to the premium was made at the time he signed, and the only words spoken when the policy was delivered were, "There is your policy." The facts in the Bostwick Case were quite similar to the facts in this case, and that case has been followed in a number of cases. Fidelity Co. v. Dierks Lumber Co., 133 Mo. App. 637, 114 S. W. 55; Hutchinson v. Palmer, 147 Ala. 517, 40 South. 339; Parsons v. Lane, 97 Minn. 98, 106 N. W. 485, 4 L. R. A. (N. S.) 231, 7 Ann. Cas. 1144; Voss v. Ins. Co., 137 Wis. 492, 118 N. W. 212.

The contract between appellant and appellee was not consummated until the policy was delivered and the first premium paid, or secured. The proceedings prior to that time were merely preliminary, and it is clear that if appellee had died before the policy was delivered, the amount of it could not have been recovered. Appellee knew full well that, under the circumstances of the case, there was no contract of insurance until the policy was delivered and the note executed. Although appellee testified that the agent "represented that this was my policy as agreed on," it is evident that was a mere conclusion, as the only language he testified to was, "There is your policy." He does not claim that the agent told him that the application stated that the premium was $270, nor that the premium expressed in the policy was $270. It is singular that a party insured would consummate a contract without even glancing at it on account of what an insurance agent had represented before that time. As said in Dellinger v. Gillespie, 118 N. C. 737, 24 S. E. 538:

"It is plain that no deceit was practiced here. It was pure negligence in the defendant not to

have read the contract. 'There it was before him, and there was no trick or device resorted to by the plaintiff to keep him from reading it."

The representations, so-called by the agent were not fraudulent representations, but were merely promises, and fraud cannot be predicated on a promise or a prophecy. No one ever told appellee that the policy contained a provision for an annual premium for $270, and it was gross and inexcusable negligence for appellant to enter into the contract without reading it.

This is not a case of an illiterate party asking relief from the consequences of his failure or inability to read the contract, but, on the other hand, the appellee is an educated man, belonging to a learned profession. As said by the Supreme Court of South Dakota in Farlow v. Chambers, 21 S. D. 128, 110 N. W. 94:

"Neither is it one in which the signer was prevented from ascertaining the truth by sub-terfuge or some fraudulent device."

In the case of Railway v. Rhodes, 19 Okl. 21, 91 Pac. 1119, 21 L. R. A. (N. S.) 490, it was held:

"We take it the rule is well established that, in the absence of any incapacity to read, or any trick or artifice resorted to to prevent his reading it, a party signing a written instrument that is plain and unequivocal in its terms is bound by its express terms and conditions therein contained, and that he cannot set up his own carelessness and his own indolence as a defense, and, because he failed to make use of the faculties possessed by him for determining its conditions, be heard to say that its terms or conditions should be other or different from what they are."

To the same effect are McNinch v. Thresher Co., 23 Okl. 386, 100 Pac. 524, 138 Am. St. Rep. 803; Magee v. Verity, 97 Mo. App. 486, 71 S. W. 472, and Wallace v. Railway Co., 67 Iowa, 547, 25 N. W. 772.

No reason for relying upon the statements of the agent of appellant is alleged in the petition or given in the evidence, and the reason that appellee was too busy to read the application or policy simply accentuates his gross negligence. He had time to make arrangements about securing the first premium by a promissory note and to write and sign that instrument.

The evidence is clearly insufficient to sustain the verdict, and the judgment must, as a matter of law, be reversed; and, as it must be presumed that appellee has testified to all matters known to him, it would be useless to remand the cause for another trial.

The judgment is reversed, and judgment here rendered that appellee take nothing by his suit and pay all costs in this behalf expended.