## McNinch v. Northwest Thresher Co.

### No. 2175, Okla. T.   Opinion Filed March 9, 1909.

#### (100 Pac. 524.)

1.   **EVIDENCE—Parol Evidence Affecting Writings—Merger of Prior or Contemporaneous Negotiations.** The execution of a contract in writing supersedes all the oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of fact; and any representation made prior to or contemporaneous with the execution of the written contract is inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract.

2.   **EVIDENCE—Parol Evidence Affecting Writings—Notes—Consideration.** Where by the terms of a written contract it is specifically stated that it is executed and delivered for and in consideration of the credit granted by one of the parties to a third person on the purchase price of certain machinery bought of said party by said third person, such provision in relation to the consideration binds the parties within the rules applicable to written contracts and can no more be altered or varied by oral evidence than any other part of the contract, in the absence of fraud, accident, or mistake.

3.   **CONTRACTS—Validity—Fraud.** If a party is induced to sign a contract by fraud, he can, of course, avoid it for that reason. It is, however, clear that merely falsely representing to a man in possession of his faculties and able to read that a writing embodies their verbal understanding is not the fraud the law means.

4.   **PLEADING—Motions to Strike Pleading—Insufficient Allegations.** Where a motion to make an answer more definite and certain is sustained, and the amended answer measurably complies with the order of the court by making the answer more definite and certain in the particulars thereby required, it is error to sustain a motion to strike such amended answer from the files, although it may not state facts sufficient to constitute a defense.

(Syllabus by the Court.)

*Error from District Court, Canadian County; C. F. Irwin, Judge.*

Action by the Northwest Thresher Company against W. R.

McNinch. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

*James L. Brown* and *Gustave A. Erixon,* for plaintiff in error.

*M. D. Libby,* for defendant in error.—The execution of a contract in writing supersedes all the oral negotiations or stipulations concerning its terms and subject matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of fact; and any representations made prior to or contemporaneous with the execution of the written contract, are inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract: *Liverpool, London & Globe Ins. Co. v. Richardson Lumber Co.,* 11 Okla. 585; *Guthrie & W. R. Co. v. Rhodes,* 19 Okla. 21; *Garrison v. Kress et al.,* 19 Okla. 433; *Mower Harwood Creamery & Dairy Co.* (Iowa) 113 N. W. 466; *Farlow v. Chambers* (S. D.) 110 N. W. 94; *Jackson v. C., etc., R. Co.,* 54 Mo. App. 636; *Pierce v. Brownenberg's Estate* (Ind.) 79 N. E. 419.

KANE, C. J. This was an action commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, upon a certain written instrument of which the following is a copy:

"$150.00.    Piedmont, O. T., June 10, 1905.    For value received, on or before the first day of August, 1905, I promise to pay to the order of Northwest Thresher Company, Stillwater, Minnesota, one hundred fifty dollars, at Piedmont State Bank, of Piedmont, O. T., with interest from maturity until fully paid at the rate of eight per cent. per annum, interest payable annually. This note is executed and delivered by me to the Northwest Thresher Company, for and in consideration of the credit granted by said company, on the purchase price of threshing machinery bought of said company by J. R. McClung of Piedmont, county of Canadian, territory of Okla. W. R. McNinch. Witness: George Gill.    Minnie McNinch."

The defendant by his answer admitted the execution of the instrument and sought to justify nonpayment and nonliability by allegations of affirmative matter separated into two paragraphs or

defenses. To the first defense a general demurrer was interposed, and to the second a motion to make more definite and certain. Both the demurrer and motion were sustained, and the defendant took leave to amend. The amended answer admitted the execution of the instrument and amplified to some extent the defense as previously stated. A general demurrer was sustained to the first defense, and the plaintiff moved the court to strike the second from the files for failure to comply with the order to make more definite and certain, which was also sustained. The defendant elected to stand upon his pleadings as amended, and thereupon judgment was rendered in favor of the plaintiff, and the defendant seeks to review these rulings of the court below by petition in error.

The first defense set up in the amended answer was based upon two theories: (1) A failure of consideration other than that stipulated in the writing; and (2) that by fraud and mistake of fact the written agreement stipulates for a particular consideration which was not the true consideration and that the true consideration failed. This defense was stated in words and figures as follows:

"(1) This defendant alleges the fact to be that, at the time the said note was signed, this defendant was the owner of a certain growing wheat crop in Canadian county, and the plaintiff was then engaged in the business of selling threshing machines and threshing outfits and engines. At the time said note was executed, plaintiff was seeking to sell one of their machines and outfits to one J. B. McClung, and the plaintiff was acting by one George Gill, in trying to sell said machine and outfit, and also in the matters hereinafter stated. (2) Plaintiff so acting by the said George Gill, who was then acting as the agent of the plaintiff, came to this defendant and verbally proffered to him, if he, this defendant, would agree to engage his threshing to them for that season, the plaintiff would sell one of its machines to the said McClung, and that they would do the threshing of the defendant that year for the usual price therefor, and that one half of the proceeds of said threshing should be given to the plaintiff for the estimate value of said work, and the other half should be by the defendant paid to McClung, and that this defendant should execute

his note to plaintiff, in advance for one half of the value of said threshing so estimated. This defendant accepted said offer, and agreed thereto, and the plaintiff, acting by said Gill, agreed to the same. (3) Thereupon the said Gill produced the blank form on which said note was signed and filled out the same; but by fraud on his part, and by accident and oversight of this defendant and by his mistake, and by the intentional fraud of the said Gill, the consideration named in said note was not erased from said blank, and the true consideration inserted therein. (4) The words, 'the consideration for said note was credit extended to the said McClung,' are wholly untrue, and do not express the contract of the plaintiff and the defendant then and there made, and this wrong statement was so intentionally made by the said Gill, for the plaintiff, and with the fraudulent intent to then and there cheat and defraud this defendant, by getting from him a note on the false pretended consideration that it was being executed and given in consideration of credit being extended to the said McClung by the said plaintiff, and he deceiving the defendant and not expressing in said note the true consideration therefor, and by getting from him a written expression and declaration of the consideration for said note, to the end that a false consideration might appear in said writing, and that the plaintiff might thereby stop the defendant from proving the real and true facts and true consideration for said note. (5) That this defendant by mistake did not discover that the consideration was so wrongly stated in said note, but, relying on the verbal contract before set out, and by reason thereof, signed said note. (6) That this defendant was deceived in said manner into signing said note. (7) And the only consideration for his so signing said note was the verbal consideration and promise of the plaintiff that the said McClung should and would for plaintiff and for the said McClung so thresh the wheat of this defendant as aforesaid. (8) And by reason of said promise and verbal agreement this defendant signed said note. (9) And had he detected the fraud so being practiced on him at that time, and not made the mistake above set out, he would not have signed the said note. (10) Neither the plaintiff nor the said McClung threshed the wheat of defendant as agreed, or any part thereof, but wholly and entirely failed so to do, whereby the consideration for said note wholly and entirely failed."

We think the demurrer to this paragraph of the answer was properly sustained. The execution of a contract in writing super-

sedes all the oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of facts; and any representation made prior to or contemporaneous with the execution of the written contract is inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract. *Liverpool, London & Globe Insurance Company v. T. M. Richardson Lumber Company*, 11 Okla. 579, 69 Pac. 936; *Guthrie & W. R. Co. v. Rhodes*, 19 Okla. 21, 91 Pac. 1119; *Garrison v. Kress et al.*, 19 Okla. 433, 91 Pac. 1130. The answer of the defendants does not allege facts sufficient to constitute accident, fraud, or mistake of facts. Taking the answer in connection with defendant's brief, it is obvious that fraud on the part of the agent of the plaintiff was the defense upon which he relied in the court below. In the third paragraph of his first defense it is alleged that "Gill produced the blank form on which said note was signed and filled out the same." This is followed by the statement that, "by the intentional fraud of the said Gill, the consideration named in said note was not erased from said blank, and the true consideration inserted therein." By "intentional fraud," as used in this allegation, he undoubtedly meant that Gill, who wrote the note, by filling in the blank spaces on the form intentionally refrained from inserting therein a statement of the true consideration. This is an immaterial allegation, as it is nowhere alleged that there was any agreement between the plaintiff and the defendant that the consideration of the note should be inserted therein. There is a further allegation to the effect that Gill intentionally refrained from erasing, or having erased, from said blank form, certain printed matter expressing a consideration different from the true consideration, in that it did not state the full consideration. The answer further alleges that this failure was due to accident and oversight of the defendant, and by his mistake it was not erased. It is difficult to tell what accident or what mistake brought about this condition. If it was mistake, it certainly was not mutual,

and, as to accident, it means no more here than an allegation or admission of negligence on the part of the defendant. The answer further alleges, in substance, that by mistake the defendant did not discover that the consideration was so wrongly stated in said note, but relying on the verbal contract before set out, and by reason thereof, signed said note. It does not appear from the answer that the defendant could not read, or that he did not know that the note he signed contained the stipulation which expressly provided that the note was executed and delivered by the defendant to the Northwest Thresher Company for and in consideration of credit granted by said company on the purchase price of the threshing machinery bought of said company by J. R. McClung.

The rule seems to be that where, by the terms of a written contract, it is specifically stated that it is executed and delivered for and in consideration of the credit granted by one of the parties to a third person on the purchase price of certain machinery bought of said party by said third person, such provision in relation to the consideration binds the parties within the rules applicable to written contracts and can no more be altered or varied by oral evidence than any other part of the contract, in the absence of fraud, accident or mistake. *Jackson v. C., St. P. & K. C. R. R. Co.*, 54 Mo. App. 636. It is well settled by the authorities that whenever the statement of the consideration leaves the field of mere recital and enters into that of contract, as shown by the intention of the parties to be gathered from the instrument, it is no longer open to contradiction by parol evidence.

"Where the recital involves a contract, it estops; if it does not involve a contract, it operates only as a unilateral general admission, and is open to explanation." (2 Wharton's Law of Evidence [3d Ed.] § 1040.)

In the case of *Guthrie & W. Ry. Co. v. Rhodes, supra,* Mr. Justice Irwin, who delivered the opinion of the court, says:

"We take it the rule is well established that, in the absence of any evidence of incapacity to read, or any trick or artifice resorted to to prevent his reading it, a party signing a written instrument that is plain and unequivocal in its terms is bound

by its express terms and conditions therein contained, and that he cannot set up his own carelessness and his own indolence as a defense, and, because he failed to make use of the faculties possessed by him for determining its conditions, be heard to say that its terms or conditions should be other or different from what they are."

The court in the above case cites *Mullen v. Beach Grove Park,* 64, Ind. 202, and quotes therefrom as follows:

"An answer admitting the execution of the subscription sued upon, but alleging that the person procuring his signature had misrepresented the contents of the subscription and the extent of the liability the defendant would incur by signing it, is insufficient."

Chancellor Kent, in volume 2, p. 485, is also quoted as fol-lows:

"The common law affords to every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or an indifference to the ordinary and accessible means of information."

In *Mower Harwood Creamery & Dairy Supply Co. v. Hill,* 135 Iowa, 600, 113 N. W. 466, the first paragraph of the syllabus reads as follows:

"Where one who can read signs a contract without reading it or having it read to him, he is bound by it, although its provisions are different than he supposed."

To the same effect are: *Reed v. Coughran et al.* (S. D.) 111 N. W. 559; *Grieve v. Grieve et al.,* 15 Wyo. 358, 89 Pac. 569, 9. L. R. A. (N. S.) 1211; *Wood v. Wack,* 31 Ind. App. 252, 67 N. E. 562.

In *Farlow v. Chambers* (S. D.) 110 N. W. 94, Presiding Judge Fuller uses the following language:

"In *Magee v. Verity,* 97 Mo. App. 486, 71 S. W. 472, a decree in equity canceling a note and trust deed for the reasons here urged was reversed on appeal, and, in the course of the opinion, the court said: 'Plaintiff cannot be allowed to show that the written paper signed by him does not contain the contract. If a party is induced to sign a contract by fraud, he can, of course, avoid it for that reason. It is, however, clear that merely falsely

representing to a man in possession of his faculties and able to read that a writing embodies their verbal understanding is not the fraud the law means.' From the case of *Bostwick v. Mutual Life Insurance Co.,* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, 67 L. R. A. 705, we quote: 'It does not militate, as counsel for respondent seem to think, against the maxim that a person cannot take advantage of his own wrong, but enforces that other one, which is quite as well established, that the court will not constitute itself the guardian of persons of mature age and ordinary intelligence, protecting them against the results of their own negligence; that it will not furnish a person a remedy for a wrong where he cannot prove a legal claim for damages without showing that his own negligence intervened between the act of the alleged wrongdoer and the result complained of, and was the real, efficient, producing cause of his injury; that in such a case it will be conclusively presumed that he voluntarily accepted the situation, because, if he had used ordinary care, the injury complained of would have been prevented.' "

There is no allegation in the answer stating that the defendant signed the written instrument in reliance upon or assurance from the plaintiff that it contained the true contract. On the contrary, it appears that he signed the writing without any assurance from, or reliance upon, anybody as to what it contained. We therefore hold that there were no allegations supporting the charge of accident, fraud, or mistake of fact.

The remaining assignment of error is that the court erred in sustaining the motion to strike out the second defense in the amended answer. On this ground the judgment of the court below must be reversed. The paragraph of the original answer to which a motion to make more definite and certain was sustained was in words and figures as follows:

"As a further defense to plaintiff's action herein, defendant alleges that the indebtedness owed to the plaintiff by the said J. R. McClung hereinbefore mentioned has been fully paid and satisfied by the said plaintiff taking back from the said J. R. McClung the threshing machine and outfit, by plaintiff sold to the said J. R. McClung, and the debt so paid is the same debt evidenced by the note in suit, and which was to be credited by any and all payments on the note in suit."

The order sustaining the motion to make more definite and certain required the defendant to make said defense more definite and certain: First, by stating when the plaintiff took back from said J. R. McClung the threshing machine and outfit mentioned in said second defense; and, second, by stating the contract or terms and conditions upon which the plaintiff took back the said machine and outfit from said J. R. McClung. The amended paragraph filed in pursuance of this order read as follows:

"The defendant hereby refers to his first defense before set out, and by such reference makes the statements thereof a part of this defense, and in addition thereto alleges that the plaintiff sold a threshing machine and outfit to the said McClung, part of the purchase thereof being paid to plaintiff in cash, and the balance represented by notes, but just how much cash was paid, and how much was represented by notes, this defendant does not know, and hence cannot state. To secure the unpaid part of the purchase price of said machine, the said McClung gave to plaintiff a chattel mortgage on said machine and outfit, and the debt so secured by said chattel mortgage and secured by it was and is the same debt represented in part by the note of defendant here sued upon in this action. About six weeks after said machine and outfit were delivered to the said McClung, and while said machine was worth the price for which it was originally sold to the said McClung by the plaintiff, the plaintiff seized the machine and outfit under said chattel mortgage and taken back by the plaintiff without sale, whereby the said debt was fully paid, and the note herein sued upon fully satisfied."

The motion to strike this paragraph from the files was sustained upon the theory that the allegations of the amended answer did not comply with the order of the court, either in form or in substance, and that it was no compliance to allege entirely new matter. We think the amended paragraph complies to a measureable extent with the order of the court. It is evident that by the term "taking back," as alleged in the original answer, the defendant meant that the plaintiff seized the machinery and outfit under the chattel mortgage, and that such seizure occurred about six weeks after said machinery and outfit were delivered to said McClung, while said machinery was worth the price for

which it was orignially sold.   The amended answer aimed to state
in detail what acts constituted the "taking back" and when the
"taking back" took place.   This is what the order of court re-
quired.   We do not believe this allegation states facts sufficient
to constitute a defense to the action, but it was error under the
circumstances to sustain a motion to strike it from the files.

In *Columbus v. Reinhard,* 1 Ohio Cir. Ct. R. 289, it was
held that a motion for judgment because of the insufficiency of
the answer is not good practice, but that a demurrer so that an
amendment can be allowed is the proper pleading.   We believe
that this rule is applicable to the case at bar.   If a demurrer had
been filed and sustained, the defendant would have been given
an opportunity to amend if he saw fit, and this he was entitled
to under the law.

In *Ellis v. Reddin,* 12 Kan. 306, it was held error for the
court to treat a motion to make more definite and certain as a
demurrer and to sustain it as such.   Mr. Justice Valentine, who
delivered the opinion of the court, in discussing this proposition,
says:

"The defendant made a motion in the court below to re-
quire the plaintiff to make his petition more definite and certain
in certain particulars.   The court overruled the motion as a mo-
tion, and then treated it as a demurrer, and sustained it as a de-
murrer, to which ruling the plaintiff excepted.   The ruling was
evidently erroneous, and the error was material.   There is a vast
difference between a motion to make more definite and certain
and a demurrer; and even if the petition would have been held in-
sufficient on demurrer, if a demurrer had been interposed, still, as
the defendant did not choose to interpose a demurrer, the court
should not have done so for him.   The petition, it is true, was
defective; but whether it should have been held insufficient if a
demurrer had been interposed, it is not now necessary to de-
termine.   It was such that if the parties had gone to trial upon
it, without objection, and a judgment had been rendered thereon
in favor of the plaintiff, the judgment would have been valid
and would not have been disturbed on petition in error."

We think this reasoning is applicable to the question now
under discussion, and for that reason the judgment of the court

below must be reversed, and the cause remanded, with directions to take such further action in the matter, not inconsistent with this opinion, as may be proper.

All the Justices concur.