## SWAIN v. PATTERSON.

No. 15205. Opinion Filed July 5, 1927.

(Syllabus.)

1. Trial—Unverified Petition—Admissions in Answer as Dispensing With Proof of Correctness of Account.

Where a plaintiff sues on an account, and the itemized statement thereof, attached to and made a part of his petition, is unverified, and defendant in his answer admits indebtedness in substantially the amount claimed by plaintiff, and pleads payment as to one part thereof, and that the other part is not due, plaintiff is not required to prove the correctness of the account at the trial.

2. Same—Proof of Execution of Contract Made Unnecessary by Conduct and Admissions at Trial.

Where both parties, at the trial, by their conduct and admissions, treat allegations of the execution of a written contract, pleaded for the first time in a reply, as true, proof of its execution and a formal offer thereof in evidence is unnecessary.

3. Contracts—Oral Negotiations Superseded by Written Contract.

The execution of a contract in writing, whether the law required it to be written or not, supersedes all oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.

Commissioners' Opinion, Division No. 2.

Error from District Court, Washington County; H. C. Farrell, Judge.

Action by M. R. Patterson against Guy Swain. There was judgment for plaintiff, and defendant appeals. Affirmed.

Campbell & Ray, for plaintiff in error.

M. E. Michaelson and J. T. Shipman, for defendant in error.

DIFFENDAFFER, C. Plaintiff in error was defendant below, and defendant in error was plaintiff below, and the parties are herein designated as in the court below.

This is an action on an alleged account stated. Plaintiff set out in his petition, in substance, that on, and prior to. January 1, 1921, and at the time of the filing of the

petition, plaintiff and defendant were jointly engaged in the ownership and operation of certain oil and gas properties in the state of Oklahoma, and that at various times prior to the 1st day of January, 1922, plaintiff, at the instance and request of defendant, had advanced the said defendant personally, and for his own use and benefit in connection with the joint ownership and operation of said oil and gas properties, the sum of $7,839.80. That defendant had advanced and paid on behalf of plaintiff, on account of said joint operation of said property, the total sum of $1,790.04; that subsequent to the first day of January, 1922, defendant and plaintiff had rendered to each other statements of monies advanced, and that said exchange of statements of account showed a balance to be due from said defendant to plaintiff on the 1st day of January, 1922, of $6,049.16. An itemized statement, not verified, was attached to this petition showing said balance.

Defendant answered, first, by a general denial; and second, in substance, that on or about the 1st day of October, 1921, plaintiff and defendant entered into an oral contract and agreement with each other, and with one J. W. Collopy, whereby plaintiff and defendant and the said J. W. Collopy had agreed to purchase, develop, equip, and operate a certain oil and gas lease in Nowata county, Okla. And among other things, it was agreed, in connection with the purchase, development, and operation of said lease in Nowata county, that said J. W. Collopy, as compensation for his services in securing said lease, should own an individed one-third interest therein, and in all of the well and equipment to be placed thereon and the production therefrom, and that his one-third interest therein should be carried, and his part of the purchase price and expense of developing and equipping said lease should be paid for out of his part of the profits arising from the operation of said lease.

And further alleging that in said contract, it was agreed by said plaintiff and defendant that they would borrow upon their joint note the sum of $6,000 to be applied upon the purchase price of said leases, and that the balance thereof, to wit, $2,400, should be advanced by the plaintiff out of his own funds, and that plaintiff would advance additional funds with which to develop and equip said leases, and that he should be reimbursed for such funds, so advanced, out of the net profits arising from the operation of said leases.

And alleging, further, that plaintiff and defendant did borrow said sum of $6,000 and applied the sum upon the purchase price of said leases, and that said sum was still owing; and that plaintiff did advance the balance of the purchase price thereof, to wit, $2,400, and advanced the further sum for the development and operation of said lease, in all amounting to $6,766.86, over and above the net income from said lease; and that said defendant took charge of and operated said lease and advanced out of his own money therefor the sum of $225, and has managed, developed, equipped, and operated same ever since for the purposes thereof.

And alleging, further, that plaintiff had agreed with defendant that in consideration of his work and labor and developing, equipping, managing, and operating said lease, he would furnish the said sum of $2,400 to apply upon the purchase price of said lease, and furnish and advance the money necessary to develop and equip the same, and await reimbursement for such money, so advanced, until the net profits of said lease should repay the same, defendant to manage and operate said lease.

Defendant further alleged that he and plaintiff were, on the 22nd day of April, 1922, the owners of a certain tract of land in Washington county, and that on said day the plaintiff purchased from defendant his undivided one-half interest therein, except the oil and gas therein and thereunder, and agreed to pay defendant for the said interest therein the sum of $3,250, and the defendant had executed, acknowledged, and delivered a deed therefor to one Lucy Carter, said deed being made to Lucy Carter at the special instance and request of the plaintiff; and further alleging that plaintiff and defendant had been for a long time jointly operating certain other oil and gas properties in Washington county, Okla., and had also looked after the superintending and developing and operation of said leases, without cost or charge to the defendant (plaintiff); and further alleged that upon a settlement of account between said plaintiff and defendant, January 1, 1922, said defendant was indebted on account of said last-mentioned oil and gas leases (Washington county) to plaintiff in the sum of $2,665.73; and that defendant was also indebted to plaintiff on account thereof, at the time of the filing of the petition herein, but that plaintiff had refused to pay said defendant said sum of $3,250, the agreed purchase price of his one-half interest in

the tract of land which plaintiff had purchased from him, or to credit him with said amount upon his indebtedness to plaintiff, and claiming that plaintiff was indebted to defendant in the sum of $584.27 over and above the sum of $2,665.73, admitted to be owing by defendant to plaintiff on account of the lease development and operation in Washington county. And alleged, further, that he was willing, if plaintiff credited him with said amount of $584.27, the balance due on the agreed purchase price of said tract of land, on the amount the plaintiff had advanced on his account for the purchase and operation of the oil and gas lease in Nowata county, Okla., after allowing defendant the proper credit for the $225 advanced by him on account of said lease.

And alleging, further, that there was nothing due from him to plaintiff on account of the Nowata county lease.

Plaintiff replied, by way of denial to each and every material allegation in said answer contained, and further specifically denied that the contract between plaintiff and defendant and J. W. Collopy for the purchase and operation of the Nowata county leases was an oral contract, but that said contract covering the purchase, development, equipment, and operation of said oil and gas leases in Nowata county was in writing, a copy of which alleged contract was attached and made a part of his reply.

The principal questions involved in this case at the trial were: First, whether plaintiff had agreed to purchase from defendant the tract of land mentioned and pay him therefor the sum of $3,250, which was to be credited on defendant's admitted indebtedness to plaintiff; and second, whether the contract between plaintiff and defendant for the purchase and operation of the Nowata county leases was an oral or written contract.

The first question appears to have been satisfactorily settled between plaintiff and defendant, after the evidence was taken and before judgment was entered below, they having sold the land in question and defendant having received his credit therefor in the sum of $3,250.

Plaintiff in error presents three propositions as error, and contends:

"First: The itemized account set up as an exhibit to the plaintiff's petition is not an account stated; and as said account was not verified and was denied by the answer and was never proven or admitted to be correct, no valid judgment could be rendered by the court therefor.

"Second: That the written contract attached to the reply of the plaintiff as an exhibit was never proven to have been executed by any of the parties, was never introduced in evidence, although under the statutes the same is taken as denied by the defendant, and it could not furnish a basis for the trial court in ruling out the offer of evidence by the defendant of an oral contract between plaintiff and defendant.

"Third: That the ruling of the court that the contract between Patterson and Swain and Collopy is an entire and complete contract between Patterson and Swain as to how and in what manner and by what means the property mentioned in the contract should be purchased, paid for, developed, and operated, was error. That the offer of evidence by Swain to prove the oral contract between him and Patterson as to how and in what manner and by what means the property was to be purchased by them, paid for, developed, and operated, was competent and material, and such proof would not have varied or changed in any particular the written contract between them, or between Patterson and Swain and Collopy."

We deem the first proposition to be of very little importance in this case, since the defendant in his answer admitted that he was indebted to plaintiff in substantially the sum claimed by plaintiff, and further, that upon a settlement of the accounts between said plaintiff and defendant to January 1, 1922, said defendant was indebted on account of said last-mentioned oil and gas leases (in Washington county) "to said plaintiff in the sum of $2,665.73, arising out of the development, equipment, and operation of said last-mentioned leases." And also admitted in his answer that "plaintiff further advanced said balance of the purchase price," that is, $2,400, "and further sums for the development and operation of said lease" (in Nowata county), "in all amounting to $6,766.86, over and above the net income from said lease." And pleaded that he had advanced of his own money for equipment on said lease the sum of $225, for which he claimed credit on his indebtedness.

There was little or no contention between plaintiff and defendant at the trial, as to the amount defendant actually owed plaintiff. Defendant apparently conceded the indebtedness and assumed the burden of proof at the trial to show that said indebtedness had been paid to the extent of $3,250 by a sale of real estate hereinbefore mentioned, and which was. as stated, adjusted between the parties between the time of the trial and the final judgment.

As to the second proposition, it is true that the written contract, which appears herein in full under the discussion of the third proposition, was never proven to have been executed by the parties, and was never introduced in evidence.

The written contract was pleaded by plaintiff for the first time in the reply. In Continental Ins. Co. etc., v. Pierce, 18 Pac. 291, a Kansas case, the court, in construing a section of the Kansas Code identical with section 287, C. O. S. 1921, held:

"The allegations of any appointment or authority, appearing as new matter in a reply, shall be deemed to be controverted by the adverse party as upon direct denial verified by the affidavit of the party, his agent or attorney without the filing of any pleading."

Section 307, C. O. S. 1921, provides:

"* * * But allegations of new matter in the reply shall be deemed to be controverted by the adverse party, as upon direct denial or avoidance, as the case may require."

The matter here under consideration cannot be said to be entirely new matter. Defendant had pleaded in his answer an oral contract. Plaintiff replied, admitting that there was a contract, but alleged that it was in writing, and attached a copy of the alleged contract to his reply. Both parties, as did the court, at the trial treated the contract as before the court, and defendant's counsel, at the trial, used such language as would likely cause the court to understand that he was admitting the execution of the contract, when he said:

"When I drew this answer, I supposed that the only contract between all parties was oral. Afterwards I found that there was a written contract drawn up between Mr. Swain, Mr. Patterson, and Mr. Collopy. * * *"

The trial court evidently took this to be an admission of the execution of the written contract.

Defendant's counsel evidently intended it to be so, as he states in his brief:

"On page 29 of the record, the defendant admits that he was in error in stating in his answer that the contract between Swain, and Patterson, and Collopy was an oral contract. * * *"

Particularly is this true, in view of the fact that defendant voluntarily assumed the burden of proof. Plaintiff's counsel evidently understood the statement as an admission of the execution of the written contract. Following strictly the provisions of section 307, supra, plaintiff, under the pleadings as

they stood, should have been required to prove the execution of the contract and to offer it in evidence. But since both parties and the court, at the trial, treated the contract as being admitted and before the court, and the only controversy being over the construction of the contract, and defendant not having specifically raised this question in his motion for a new trial, it will be so treated here.

A party will not be permitted to adopt one theory at the trial and on appeal urge entirely different and opposite theory. We think the course pursued by all parties at the trial was such as to justify the trial court in its ruling.

The third proposition of defendant presents a more serious question. Defendant earnestly contends that no part of the amount that he admitted in his answer he owed the plaintiff was due at the time of the filing of the petition, except the sum of $2,665.73, arising out of the development, equipment, and operation of the oil and gas property in Washington county, and claims that that part of the indebtedness which he admits owing to plaintiff arising by reason of the advancements made by plaintiff on the purchase price and operation and equipment of the Nowata county leases was not at that time due, by reason of what he claimed in his answer was an oral contract entered into between himself and the plaintiff and one J. W. Collopy on or about the first day of October, 1921, for the purchase and operation of said Nowata county leases; and claimed that as part of this oral agreement plaintiff had agreed that he and defendant would borrow upon the joint note the sum of $6,000, which should be applied upon the purchase price of said lease, and that the balance of the purchase price, to wit, $2,400, would be advanced by said plaintiff out of his own fund; and that plaintiff in said oral agreement had agreed that he, plaintiff, would advance additional funds to develop and equip said lease, which should be reimbursed for such funds advanced out of the net profits arising from the operation of said lease.

By plaintiff's reply, he specifically denied that the contract was an oral contract, but alleged that the contract was in writing, and attached a copy thereof to his reply, which is as follows:

"This agreement made and entered into in triplicate this 17th day of October, 1921, by and between M. R. Patterson of Tulsa, Oklahoma, party of the first part, and Guy Swain of Bartlesville, Oklahoma, party of the second part; and J. W. Collopy of Tul-

sa, Oklahoma, party of the third part, Witnesseth:

"Whereas, parties of the first and second part now own and are acquiring by assignment three oil and gas mining leases covering the following described lands in Nowata county, Oklahoma, to wit: (Here follow descriptions of three tracts of land in Nowata county, Oklahoma; the first being described as a commercial producing oil and gas mining lease, and the other two under departmental undeveloped oil and gas mining lease.)

"Now therefore, for and in consideration of $1.00 in hand paid, receipt of which is hereby acknowledged and upon the further payments to be made by party of the third part as hereinafter provided, parties of the first and second part hereby agree to assign and convey unto party of the third part an undivided one-third interest in and to the above-described oil and gas mining lease.

"It is mutually agreed that the parties hereto shall bear equally all of the costs of the acquisition of said leases and of the operation of said leases and of the operation and development of the same.

"It is further agreed that upon the execution of this agreement party of the third part shall give unto parties of the first and second part his promissory note in writing for his equal one-third share of the cost and expense of said leases accrued at this date, said note to bear interest at the rate of eight per cent. per annum from this date; that parties of the first and second part shall have charge and control of the development and operation of said leases and pay the costs thereof and render unto party of the third part each thirty days, commencing with the date of this agreement, a statement of the costs and expenses incurred and of all receipts of oil and gas sold from said leases and party of the third part agrees to give parties of the first and second part a new note in substitution of the preceding note, said note to cover the amount of the preceding note and all expenses and costs incurred since the preceding note was given after due credit is given from one-third of the receipts from the sale of oil and gas from said leases.

"Parties of the first and second part further agree to deliver unto party of the third part duly executed assignment of an undivided one-third interest in and to the above-described oil and gas mining leases at any time the one-third of the receipts of the sale from oil and gas from the above-described leases shall equal in amount the one-third of the costs of said leases and of all development and operating expenses thereon, chargeable to party of the third part.

"It is further mutually agreed that the party of the third part shall have the option to pay any balance due on his one-third of the costs of said leases and of the development and operating expenses, and receive at said time an assignment and transfer of his undivided one-third interest therein.

"It is further mutually agreed by and between the parties hereto that before either of said parties shall sell or assign his interest in said leases that the other parties to this agreement shall have the refusal of the purchase of said interest at the best price offered therefor.

"It is mutually understood and agreed that the assignment of the departmental leases above described are to be executed by parties of the first and second part on the forms prescribed by the Secretary of the Interior and are subject to the approval of said Secretary and the parties hereto agree to co-operate and to execute all applications, bonds and papers necessary to secure the approval of said leases by the Secretary of the Interior.

"This agreement shall be binding upon the parties hereto, their heirs, administrators, executors and assigns.

"In witness whereof, the parties hereto have hereunto set their hands the day and year first above written.

Contract was acknowledged by plaintiff and defendant before a notary public on the 19th day of October, 1921.

When defendant, at the trial, offered evidence to support his alleged oral agreement, plaintiff objected thereto upon the ground that the contract between plaintiff and defendant and Collopy with reference to this property was in writing, and had been admitted by counsel for the defendant in his opening statement as the contract between the parties. The opening statement of counsel for defendant does not appear in the record, and we cannot know what admission, if any, with reference thereto counsel did make in his opening statement. But when the objection was made, as above stated, counsel for defendant made the following statement in open court:

"When I drew this answer, I supposed that the only contract between all parties was oral. Afterward I found that there was a written contract drawn up between Mr. Swain and Mr. Patterson and Mr. Collopy, but the part of the contract that affects this lawsuit is the oral part of the contract. If your honor notices the reading of this contract you will at once see that it was the intention of the three parties to this contract that in reality it was a contract between Mr. Swain and Mr. Patterson on the one side and Mr. Collopy on the other, and instead of being a three-party contract, it is in fact simply a bi-party

contract, that is, there are two parties to it; that the written contract was drawn up for one express purpose—to show the relation between Mr. Collopy on the one part and Mr. Swain and Mr. Patterson on the other part."

The court sustained the · objection of plaintiff's counsel, and counsel for defendant then offered proof tending to sustain the allegations of his answer with reference to the oral contract. The court sustained an objection to this offer, and the question is: Did the trial court commit error in so doing? We think not.

It will be observed that defendant, in his answer pleaded that the oral agreement, upon which he relied, was entered into between himself and plaintiff and Collopy on or about the 1st day of October, 1921, whereby said plaintiff and said defendant and said Collopy agreed to purchase, develop, equip, and operate an oil and gas lease on the real estate in Nowata county; that, among other things, it was agreed that Collopy, as compensation for his services in procuring said lease for said parties, would own an undivided one-third interest in all of the wells and equipment to be placed thereon and the production therefrom, and that his, Collopy's, one-third interest could be carried, and his part of the purchase price and the expense of developing and equipping said lease should be paid for out of his part of the profits arising from the operation of said lease, the proceeds from the sale of one-third of the oil and gas from said lease to be applied in liquidation of his share of the purchase price of said lease, and the development. equipment, and operation thereof.

The written contract shows that it was entered into between the same parties. covering substantially the same matter, October 17, 1921.

Defendant in his brief contends that the only question arising in said contract that in any way defines the developing and operation by Patterson and Swain is found in that paragraph reading as follows:

"It is· mutually agreed that the parties hereto shall bear equally all of the costs of the acquisition of said leases and of the operation of said leases and of the operation and development of the same."

We think the contract goes much farther than this and recites that party of the first part and party of the second part, that is, Patterson and Swain, own and are acquiring by assignment three oil and gas mining leases covering the land described in Nowata county, and describes the land.

In the next paragraph, it sets forth that:

"For and in consideration of $1.00 in hand paid, receipt of which is hereby acknowledged and upon the further payments to be made by party of the third part as hereinafter provided, parties of the first and and second part hereby agree to assign and convey unto party of the third part an undivided one-third interest in land, to the above-described oil and gas mining leases."

In the next paragraph, it recites:

"It is mutually agreed that the parties hereto shall bear equally all of the costs of the acquisition of said leases and of the operation of said leases and of the operation and development of the same."

The next paragraph provides:

'That upon the execution of this agreement party of the third part shall give unto parties of the first and second part his promissory note in writing for his equal one-third share of the cost and expense of said lease accrued at this date, said note to bear interest at the rate of eight per cent. per annum from this date; that parties of the first and second part shall have charge and control of the development and operation of said leases and pay the costs thereof and render unto party of the third part each thirty days, commencing with the date of this agreement, a statement of the costs and expenses incurred and of all receipts of oil and gas sold from said leases and party of the third part agrees to give parties of the first and second part a new note in substitution of the preceding note, said note to cover the amount of the preceding note and all expenses and cost incurred since the preceding note given after due credit is given for the one-third of the receipts from the sale of oil and gas from said leases."

The contract provided for the execution and delivery of proper assignments to Collopy when he shall have paid his one-third of the costs of the acquisition and operating expenses of the lease.

It will be seen from the contract that it sets out just how Collopy's interest shall be carried and paid for, and that plaintiff and defendant are to have charge and control of the development and operation of said leases and pay the costs thereof.

We think that by the terms of said contract defendant obligated himself to pay his portion of the costs of the acquisition, equipment, and operation of said leases as they accrued. If this were not true, there would have been no reason for the contract providing that Collopy should give his note to Patterson and Swain each month to cover the amount of all the expenses incurred since the giving of the preceding note.

after giving him credit for the one-third of the receipts from the sale of oil and gas from said leases. If it had been intended that Patterson should advance all the money with which to develop these leases, there would have been no occasion for Collopy making his notes to Patterson and Swain, as Swain could have had no interest in that portion of the expenses, and the note would have naturally been made to Patterson alone.

We think, therefore, that the evidence offered by defendant and rejected by the court was properly rejected, for the reason that it was an effort by oral testimony to contradict and vary the terms of the written agreement. This he could not do. In Spaulding et al. v. Howard et al., 51 Okla. 502, 152 Pac. 106, it is held:

"Both the statute and the common law prohibit the introduction of evidence of prior or contemporaneous oral negotiations or statements to contradict or vary the terms of a written agreement."

In McNinch v. Northwest Thresher Co., 23 Okla. 386, 100 Pac. 524, it is held:

"The execution of a contract in writing supersedes all the oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument in the absence of accident, fraud, or mistake of fact; and any representation made prior to or contemporaneous with the execution of the written contract is inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract."

See, also, National Bank of Hastings v. Pierce, 94 Okla. 153, 221 Pac. 111; Loveland et al. v. Austin, 97 Okla. 175, 223 Pac. 394; Cromwell et al. v. Lewis, 98 Okla. 53, 223 Pac. 671.

No material error prejudicial to the substantial rights of the defendant appears in the record. The court seems to have reached a right conclusion, and its judgment should, therefore, in all things be affirmed.

BENNETT, HALL, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 1 C. J. p. 727, §397 (Anno.) (2) 3 C. J. p. 735, §§628, 629. (3) 13 C. J. pt 597, §616; 22 C. J. p. 1102, §1459; 6 R. C. L. p. 914; 2 R. C. L. Supp. p. 243; 4 R. C. L. Supp. p. 450; 6 R. C. L. Supp. 418.