## LEFORS v. MIAMI BUILDING & LOAN ASSN.

No. 28100. June 21, 1938.

Rehearing Denied Sept. 27, 1938.

J. J. Smith, for plaintiff in error.

A. G Croninger, for defendant in error.

WELCH, J. The plaintiff, Miami Building & Loan Association, began this action in the district court of Ottawa county to recover an alleged balance due it of $348.99, by reason of a loan of $1,500 theretofore made the defendant, Vida B. Lefors, and to foreclose a real estate mortgage given to secure such loan

From a judgment for plaintiff, on the pleadings, after certain allegations of defendant's answer had been stricken, the defendant brings appeal. The question presented here is whether the court erred in striking these allegations from defendant's answer. The pleadings are lengthy and will be summarized.

The petition sets out in full certain written instruments signed by defendant, to wit: An application for a loan, a note and application for stock, and a mortgage. The petition sets out the by-laws of the association.

The following pertinent facts are disclosed by these instruments, a part of the petition.

On October 22, 1927, the defendant borrowed $1,500 from the plaintiff association, agreeing to pay 10 per cent. interest thereon, payable monthly on the first day of each month. Defendant also subscribed for 15 shares of class "A" stock at $100 per share, subject to the by-laws of the plaintiff, which by-laws provided that class "A" installment stock should be paid for in monthly installments of 80 cents per share. Defendant agreed to pay monthly not less than $24.50 to be applied as follows: First, to the payment of any insurance, taxes, or other charges properly chargeable to defendant; second, to the payment of interest due on the loan; third, the balance, if any, of said amount to be applied toward the payment of the stock subscription.

The note and application for stock are combined in one instrument and contain this provision:

"Said monthly payments shall be continued until said stock is fully matured by the application of payments as aforesaid together with the dividends earned and credited thereon."

The note further provides that the stock is assigned to the association as collateral security, and that when the stock has matured or payments thereon have been· defaulted, the association shall withdraw said stock and apply the withdrawal value thereof to the payment of the loan. interest thereon and any other charges which the association might have against the defendant. It was also provided that default in dues for six months, or interest for two months, shall give ground for the maturity of the whole debt and the foreclosure of the mortgage.

The petition. with the matters above mentioned embodied therein, alleges grounds of foreclosure. and prays for judgment against the defendant for $348.99, with interest thereon at 10 per cent. from November 13, 1935, until paid; fi50 attorney's fee and

costs, and for the foreclosure of the mortgage. It sets forth that the above amount is the unpaid balance after applying the withdrawal value of the collateral security in the sum of $1,226.01 to the indebtedness of the defendant.

After there was stricken from defendant's answer all portions and allegations except the formal general denial, the defendant, in open court, admitted the execution of the instruments sued upon, declined to plead further, and elected to stand upon the answer as originally presented.

Summarized, that portion of the answer stricken presents these matters:

First: That defendant had paid 91 monthly payments of $24.50 upon the contract and tendered another payment of like amount in satisfaction of plaintiff's demand.

Second: That at the time the loan was negotiated it was mutually determined and agreed that by the defendant making monthly payments of $24.50 over a period of 92 months, and by having applied to defendant's account the dividends accruing upon the stock then subscribed for, the defendant's loan would be liquidated.

Third: That at the time the plaintiff was paying to subscribers for stock, and had been prior thereto, an 8½ per cent. annual dividend, and then agreed to pay this defendant such sum during the life of the loan, which dividends were to be credited upon defendant's indebtedness to plaintiff.

Fourth: That the earning of the plaintiff was at all times sufficient to pay an 8½ per cent. annual dividend, but after completion of the transaction between defendant and plaintiff, said plaintiff fraudulently withheld said earnings to prevent defendant from receiving any dividend, and placed said earnings in a reserve fund for plaintiff's own benefit.

Fifth: That defendant is entitled to have applied upon the alleged indebtedness claimed by plaintiff annual dividends upon the stock subscribed for by defendant; that defendant is entitled to an accounting.

The defendant, in support of her contention that the trial court erred in striking certain portions of her answer, presents three propositions:

"Is the defendant entitled to show, by evidence, that at the time she obtained the loan in question it was agreed that by making 92 monthly payments to the company of $24.50 each, said loan would, with interest, be repaid, and is she entitled to show that the association agreed to pay her, upon the stock subscribed for, an annual dividend of 8½ per cent?

"Is the defendant entitled to plead and prove that the plaintiff did, in fact, during the period in question, earn dividends and profits which, for the purpose of cheating her, were purposely, fraudulently or capriciously withheld; and, granting that plaintiff did earn profits and dividends, as charged, which were wrongfully withheld, as charged, is she not now entitled to have them credited upon her account as an offset to plaintiff's right of recovery?

"Is not the defendant, under the allegations laid out in her answer, entitled to an accounting?"

The written contract between the parties provides that monthly payments of not less than $24.50 shall be made by the defendant and that said monthly payments shall be continued until the stock is matured by the application of payments, together with the dividends earned and credited on the stock.

The contract provides that the monthly payment be used, first, to the payment of any insurance, taxes, or other charges properly chargeable to defendant; second, to the payment of interest on the loan; third, the balance, if any, to the payment of the stock subscription.

The loan was for $1,500, and the interest thereon was due and payable the first of each month at the rate of 10 per cent. per annum.

The stock subscribed for was 15 shares of class "A" stock at $100 per share, to be paid for at the rate of 80 cents per share per month.

Thus by the application of a definite part of the monthly payment to interest, and a definite part to the stock subscription, it is provided that the stock will mature at a definite time and that the payments shall continue until a definite time or until a definite number have been made, subject to certain contingencies provided for in the contract. In other words, the length of time such monthly payments are to be made might be extended by the use of some portion of the funds to pay charges properly chargeable to defendant, which portion would otherwise have been used or applied on the stock subscription. On the other hand, the length of time such payments are to be made might be decreased by dividends earned and credited to the stock subscription.

The contract states that the payments shall be $24.50 per month, and that they shall be continued until the withdrawal value of the stock shall equal the amount due on the loan. Under the terms of the contract the number of payments defendant agreed to pay is not uncertain, and it is clear that no definite rate of annual dividend was contemplated. The alleged oral agreement that the loan would be repaid upon the payment of 92 monthly payments by defendant, and that plaintiff would pay an annual dividend of 8½ per cent. during the period upon the stock subscribed, is clearly at variance and contradictory to the terms of the written contract; said oral agreement was superseded by the written contract. Section 9456, O. S. 1931.

In the case of McNinch v. Northwest Thresher Co., 23 Okla. 386, 100 P. 524, the rule applicable here is stated as follows:

"The execution of a contract in writing supersedes all the oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of fact; and any representation made prior to or contemporaneous with the execution of the written contract is inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract."

The alleged oral agreement being unavailable in defense of plaintiff's action, the trial court did not err in striking the allegations relating thereto from defendant's answer.

We will now consider defendant's further propositions:

As shown by the contract the installment stock subscribed for by defendant had a value when paid for equal to the amount of the loan made to her, and when the stock matured it would be canceled and defendant's debt thereby canceled. Under the contract and by-laws, the stock would mature when the amount paid in by defendant plus his share of the earnings equaled the par value of the stock. The primary purpose for the issuance of such stock, aside from the privilege thereby granted to borrow money, was that defendant might during the life of the contract participate in the earnings of the association.

The extent of defendant's possible participation in the earnings of the association is provided in the by-laws. Section 2 of article 3 of the by-laws reads in part:

"* * * Installment stock shall participate in the net earnings of the association as set out in section 13 of this article. * * *"

Said section 13, as amended, provides:

"At the regular meeting of the board of directors in the months of January and July in each year they shall declare such dividends as may accrue from the earnings of the association, after deducting therefrom all expenses, depreciation, interest, dividends on full paid and optional payment installment stock, taxes, losses, if any, and such sums as they may reserve for the contingent reserve fund. The dividends so declared shall be credited to the accounts of the installment and prepaid stock in proportion to the net amounts paid in on such stock. * * *"

The by-laws make it the duty of the board of directors when earnings of the association have accrued, and after meeting certain definite charges and expenses, to declare a dividend to be credited to the account of the installment stock, except that the directors are given the discretion of determining the amount to be reserved in the contingent reserve fund.

Thus, under the by-laws, the question of whether a dividend shall be declared rests in the discretion of the directors.

The rule that the power of the courts may be invoked for the protection of stockholders against bad faith upon the part of directors is universally recognized.

The rule is stated in 14 C. J. page 813, as follows:

"Although the rule is that whether a dividend shall be declared, and, if declared, its amount rest in the sound discretion of the directors, directors will not be allowed to abuse their discretion as to declaring dividends, and to use their power illegally, wantonly, or oppressively. So where there are net or surplus profits out of which a dividend may be declared, and the directors fraudulently refuse or neglect to declare and pay a dividend, a court of equity will compel them to do so. And the same is true where the directors refuse to divide surplus profits as dividends on the ground that such profits are necessary for some unauthorized purpose or purposes, or where the action of the board of directors in refusing to declare a dividend is merely arbitrary or capricious."

That the debt has been paid is always a good defense to an action to foreclose a mortgage or to secure judgment on a debt.

The contract sued upon here provides that defendant's debt be credited with the value of the stock, and that the value of the stock is determined by the amount paid

on it, together with the dividends earned and applied. Clearly under such contract the defendant is entitled to show that her stock was matured and was worth the amount of the debt, or to show any increase of value of the stock that would reduce the debt.

Upon a determination that the trial court should hear and determine the allegations of defendant's answer that the earnings of plaintiff were sufficient, in accordance with the by-laws, to apply dividends upon defendant's stock except for the fraudulent and arbitrary conduct of the directors in withholding said dividends, it follows that if said allegations are sustained by the proof, then, under the contract, defendant's stock would be increased in value to the extent of the earnings found to be wrongfully withheld, and the debt accordingly reduced, thereby constituting a defense to the action. We conclude that the trial court erred in striking the allegations of defendant's answer, except that portion relating to the oral agreement.

The judgment is reversed, with directions to hear and determine the issues presented by the pleadings, in conformity with the views herein expressed.

BAYLESS, V. C. J., and RILEY, PHELPS, CORN. GIBSON, and HURST, JJ. concur. OSBORN, C. J., and DAVISON, J., absent.